G. O. REAUGH ET AL V. McCOLLUM EXPLORATION COMPANY ET AL.

No. 7857. Decided June 24, 1942.
Rehearing overruled July 22, 1942.
(162 S. W., 2d Series, 620.)

*B. D. Kimbrough,* of McAllen, for plaintiffs in error.

Where the landowner's title is clouded by the wrongful act or claims of another, and as a result of such cloud of the title the landowner is prevented from accepting an offer of an oil and gas lease on the property, the gravamen of the action is for interferring with the owner's lawful right to use and dispose of his property, hence only special damages are recoverable, and the measure of damages in such case is the cash value of the consideration offered for the lease, regardless of the remaining value of the property or a lease thereon. Houston Chron. Pub. Co. v. Martin, 84 S. W. (2d) 816; Thuss on Oil & Gas, (2d Ed.) 308; Humble Oil & Ref. Co. v. Wood, 292 S. W. 200.

*R. D. Cox, Jr.,* of McAllen, *Strickland, Ewers & Wilkins,* of Mission, *Baker, Botts, Andrews & Wharton* and *Gaius G. Gannon,* all of Houston, for defendants in error.

On the question of measure of damages: Solberg v. Sunburst Oil & Gas Co., 76 Mont. 254, 246 Pac., 168; Mollohan v. Patton, 110 Kan. 663, 202 Pac. 616; 3 Tex. Jur. 383.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This suit was brought to remove cloud from title to land caused by the recording of a purported oil and gas mining lease, and to recover actual and exemplary damages for slander of title. The material question to be determined is the measure of damages to be applied in such a case.

In brief, two of the four joint owners of a tract of land signed an oil and gas mining lease to the defendant on the land and delivered it to the defendant's agent, while the understanding that it was not to become binding until signed and acknowledged by all joint owners of the land. Without securing the signatures of the other owners the defendant had the purported lease recorded and refused to release the same. The four owners had an opportunity to sell the lease on the land at $250.00 per acre and certain royalties, but were unable to

close the trade because of the cloud cast on the title by the recording of the purported lease and defendant's refusal to release same. The trial court upon the verdict of the jury entered judgment removing the cloud and awarding actual damages in the sum of $250.00 per acre and exemplary damages in the sum of $5,000.00. The Court of Civil Appeals held that the trial court had applied an incorrect measure of damages, and as a consequence reversed the judgment and remanded the cause for a new trial, but the members of the court were not in full accord among themselves as to the measure of damages to be applied upon another trial. 146 S. W. (2d) 1109. Hence this Court granted a writ of error.

The trial court was of the opinion, and so held, that the measure of damages for the slander of title resulting in the loss of the sale of the oil and gas mining lease was the full amount for which the lease could and would have been sold but for the recording of the purported lease. In other words, the trial court refused to allow credit for the value of the lease, or the amount for which it could have been sold, at the time of the trial. We are not in accord with this view. It should be noted in the outset that the plaintiffs elected to combine in one suit their action to remove cloud and also to recover damages for the slander of title.

■ The fundamental purpose underlying all rules of damages, other than punitive damages, is to indemnify the injured party for the pecuniary loss suffered by him, placing him as nearly as possible in the position that he would have occupied but for the injury in question. Sabine & E. T. Ry. Co. v. Joachimi, 58 Texas 456; Burr's Ferry, B. & C. Ry. Co. v. Allen (Civ. App.), 149 S. W. 358; Davis v. Standard Rice Co. (Civ. App.), 293 S. W. 593 writ dismissed) ; 13 Tex. Jur. 73; 17 C. J. 728.

■ There was evidence that at the time of the trial of this case leases on land in the neighborhood of the land in question were worth from $400.00 to $600.00 per acre. In other words, if this evidence be true, at the time of the trial when the purported lease on the land in question was cancelled by the judgment of the court, and the cloud created thereby removed, the market was such that the plaintiffs could have sold another lease on the same land for as much, or more, than they would have sold the lease in question in the first instance had not the sale been frustrated by the unlawful recording of the

purported lease. But regardless of whether this evidence be true or false, it is evident from the record that a lease on the land could have been sold for something at the time of the trial. It is readily apparent that to allow the plaintiffs to recover the full amount for which they could and would have sold the lease, and to permit them to retain the land with the cloud removed therefrom, would be to allow them to recover more than they were actually damaged. This would be allowing the plaintiffs to "have their cake and eat it too." It is very clear, we think, that in assessing the damages there should have been deducted from the amount for which the lease would have been sold, had the sale not been frustrated, the amount for which the lease would have been sold at the time of the trial. We have found no adjudicated cases directly in point, but the following have been found helpful on the question: Cawrse v. Signal Oil Co., 164 Or. 666, 103 Pac. (2d) 729, 129 A. L. R. 174; Stroud v. Smith, 194 Pa. 502, 45 Atl. 329; Manitoba Free Press Co. v. Nagy, 39 Can. S. C. 340; 6 B. R. C. 497; 9 Ann. Cas. 816; Dent v. Balch, 213 Ala. 311, 104 So. 651; Butts v. Long, 94 Mo. App. 687, 68 S. W. 754; Young v. Geiske, 209 Pa. 515, 58 Atl. 887.

On the question of the measure to be applied in assessing damages for the unlawful publication of disparaging matter concerning one's property in land, which impairs the vendibility thereof, Restatement of the Law of Torts, Vol. 3, Sec. 633, makes the following comment:

"(d) *Extent of loss, how proved.* The extent of the pecuniary loss caused by the prevention of a sale is determined by the difference between the price which would have been realized by it and the salable value of the thing in question after there has been a sufficient time following the frustration of the sale to permit its marketing. The depreciation of the thing from any cause after such time has elapsed is immaterial."

This comment appears to be very well in point on the question here under consideration, and supports the rule above announced.

Whether, in determining the value of a lease on the land at the time of the trial, we should consider the land with the cloud on it, or with the cloud removed, presents a more difficult question. After a most careful consideration we have concluded that it should be considered with the cloud removed.

As above stated, the plaintiffs elected, as they had a right to do under our blended system, to maintain a single suit for the twofold purpose of removing the cloud and recovering the damages. The evidence supported plaintiffs' contention, and the court undertook to remove the cloud and assess the damages all at the same time, as it was required to do. The purported lease was cancelled by the judgment of the court and the cloud was thereby removed. When this occurred the plaintiffs were then in position to lease the land, free of the encumbrance, the same as if the title has never been clouded. Consequently, in assessing the damages to be awarded to them the plaintiffs should have been resuired to deduct from the amount for which they could and would have sold the lease, had the sale not been frustrated, the amount for which they could have sold a lease on the land at the time of the trial with the cloud removed. Of course, due allowance should be made for the value of the use of the amount for which the lease would have been sold from the time the sale would have been concluded to the date of the judgment. In addition, exemplary damages may be allowed upon a proper showing.

It is argued that if the damages are assessed on the assumption that the cloud is to be removed as of the date of the trial, and the defendants should thereafter suspend the judgment by appealing the case, the value of the lease might further decline, pending the appeal, resulting in additional damages for which the plaintiffs would not have been compensated by the judgment. It is sufficient, we think, to say that such a situation is purely speculative and is not properly before us for consideration at this time. For that reason we need not here determine what would be the consequences. The right of the plaintiffs to recover in a subsequent suit, for additional damages caused by the continuation of wrongful conduct, pending appeal, is discussed in the following authorities: 26 Tex. Jur. 63, note 1; 26 Tex. Jur. 133; Hermann v. Allen, 103 Texas 382, 128 S. W. 115; Johnson v. McMahon (Civ. App.), 40 S. W. (2d) 920; Roberson v. Tom (Civ. App.), 206 S. W. 723; McConnell v. Libecap (Civ. App.), 38 S. W. (2d) 408; Chestnut v. Sales, 49 Mont. 318, 141 Pac. 986, 52 L. R. A. (N. S.), 1199; Corn Exch. Bank v. Blye, 25 N. E. 208 (also reported as Commerce Exch. Nat. Bank v. Blye, 123 N. Y. 132); 2 Freeman on Judgments (5th ed.), p. 1265, sec. 601.

■ Thus far we have proceeded just as if the spurious lease placed of record by the defendant slandered the title of each

of the plaintiffs. But that is not the true state of the record. As pointed out in the principal opinion of the Court of Civil Appeals, Mesdames Cowgill and Lambert owned each a 1/6th interest in the land in question. The spurious lease disclosed on its face that those parties were to join as lessors. But the lease did not purport to have been signed by them. The recording of the lease executed by the Reaughs clouded their title to a 2/3rds interest in the land, but did not cloud the title to the 1/3rd interest of Mesdames Cowgill and Lambert in such way as to permit them to maintain an action for slander of title. One of the elements of a cause of action for slander of title which must always be alleged and proved is that the plaintiffs possess an estate or interest in the property slandered. Stovall v. Texas Co. (Civ. App.), 262 S. W. 162, writ refused, 114 Texas 582, 278 S. W. 1115. The spurious instrument could not reasonably be construed as purporting to cover the interests of any parties named as lessors therein except those whose signatures were affixed thereto. The Court of Civil Appeals correctly reversed the case on that ground. Upon another trial these parties should be dropped from the suit. Since the two remaining plaintiffs only owned an undivided 2/3rds interest in the land, including the mineral interest therein, the measure of their damage will be the difference, if any, between the amount which they would have received for their 2/3rds interest under the previous contract and the amount for which they can lease their interest under a similar contract at the time the cloud is removed.

The judgment of the Court of Civil Appeals, reversing the judgment of the trial court, is affirmed, and the cause is remanded for a new trial not inconsistent with the principles herein announced.

Opinion delivered June 24, 1942.

Rehearing overruled July 22, 1942.